United States District Court
Southern District of Texas
FILED
MAY 12 2025
Nathan Ochsner, Clerk

United States District Court
Southern District of Texas
**ENTERED**
May 12, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| MIRASOLES PRODUCE USA, LLC, § § | |
| Plaintiff, § § | |
| VS. § | CIVIL ACTION NO. 7:24-CV-0251 |
| § § | |
| MENA PRODUCE, LLC and § CESAR ALEJANDRO MENA GARCIA § d/b/a CESAR MENA, § § | |
| Defendants. § | |

## REPORT AND RECOMMENDATION

Plaintiff Mirasoles Produce USA, LLC sued Defendants Mena Produce, LLC and its owner, Cesar Alejandro Mena Garcia, pursuant to the trust provision of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, alleging that Defendants failed to pay invoices for two batches of fresh chili peppers. (Dkt. No. 1). In March 2025, upon Defendants' default, a final judgment was entered in Plaintiff's favor. (Dkt. Nos. 23, 24). As part of that judgment, Plaintiff was awarded its full liquidated damages claim of $6,975.00 in principal, pre-judgment interest, post-judgment interest, and costs. (Dkt. No. 24).

Pending now is Plaintiff's *Motion for Attorney's Fees and Costs* (the "Motion") (Dkt. No. 25). Through the Motion, Plaintiff requests an award of $18,861.25 in attorney's fees incurred by its attorney, Mr. Mark A. Amendola, and court costs in the amount of $977.02. (*Id.* at 5-7). The Motion is accompanied by the declaration of Mr. Amendola, who offers invoices in support of his billed attorney hours and costs and explains his credentials in support of his normal hourly billing rate. (Dkt. No. 25-1). Defendants have not filed a response, such that the Motion is deemed unopposed. *See* S.D. Tex. L.R. 7.4.

This case was referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). After review of the briefing, the record, and the relevant law, the Magistrate Judge RECOMMENDS that the Motion (Dkt. No. 25) be GRANTED to the extent that Plaintiff should be awarded attorney's fees in the amount of $15,225.00 and costs in the amount of $977.02.

## I. LEGAL STANDARD

The trust provision under PACA does not expressly provide for the award of attorney's fees to the prevailing party. *See Hereford Haven, Inc. v. Stevens*, 1999 WL 155707, at *4 (N.D. Tex. Mar. 12, 1999). The provision states, rather, that trust assets must be held for the benefit of all unpaid sellers "until full payment of the *sums owing in connection with* such transactions has been received" by the sellers. 7 U.S.C. § 499e(c)(2) (emphasis added). The phrase "sums owing in connection with" is broad enough to "encompass[ ] not just the contract price for the delivered agricultural commodities but also all sums the buyer owes in connection with the transaction." *Iscavo Avocados USA, LLC v. Pryor*, 953 F.3d 316, 319 (5th Cir. 2020). This may include attorney's fees a seller incurs in seeking to collect on an unpaid invoice, provided the buyer agrees to pay such costs as memorialized by the invoice. *See id.* at 319-20.

The determination of an appropriate award of attorney's fees begins with the calculation of the "lodestar" amount, which is arrived at by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work. *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam); *see also Produce Pay, Inc. v. Amore Produce, LLC*, 2021 WL 5155715, at *3 (S.D. Tex. July 21, 2021).

The fee applicant bears the burden of submitting adequate documentation of the hours reasonably expended in the case. *Wegner v. Standards Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997). The applicant must demonstrate the exercise of billing judgment, which requires the

documentation of "the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799 (citing *Walker*, 313 F.3d at 251). "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id.* (citing *Walker*, 313 F.3d at 251). Notably, the burden of proving the reasonableness of the hours expended "does not shift to the opposing party merely because that party does not show that the hours are unreasonable or that it did not make specific objections to the hours claimed." *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990).

"The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate." *Riddle v. Tex-Fin, Inc.*, 2011 WL 1103033, at *6 (S.D. Tex. Mar. 22, 2011) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). The relevant community is the community where the district court sits. *Tollett*, 285 F.3d at 368. An affidavit by the applicant's attorney is some evidence that the requested rate is in line with prevailing rates in the community for similar services by lawyers of comparable skill, experience, and reputation. *See Riddle*, 2011 WL 1103033, at *6 (citing *Deltatech Constr., LLC v. Sherwin-Williams Co.*, 2005 WL 3542906, at *3 (E.D. La. Nov. 3, 2005)). "In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services." *Id.* (citing *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976)).

Once determined, the lodestar amount is strongly presumed to be reasonable. *Saizan*, 448 F.3d at 800 (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)). However, a court may adjust the amount based on the twelve so-called *Johnson* factors. These factors are:

> (1) the time and labor required [for the representation]; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly;

> (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Saizan*, 448 F.3d at 800 n.18 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

"[O]f the *Johnson* factors, [a] court should give special heed to the time and labor involved, the customary fee, the amount involved[,] and the result obtained, and the experience, reputation[,] and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The most critical factor is the degree of success obtained. *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (quotations omitted). A low damages award, however, does not by itself justify reducing an award of attorney's fees. *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 257-58 (5th Cir. 2018). The Fifth Circuit has also cautioned that some of the *Johnson* factors are subsumed in the initial lodestar calculation and should not be double counted. *Migis*, 135 F.3d at 1047 (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993)).

## II. ANALYSIS

### A. Entitlement to Attorney's Fees

The Magistrate Judge will first consider whether Plaintiff is entitled to attorney's fees based on any contractual language in the unpaid invoices. *See Iscavo Avocados*, 953 F.3d at 319-20. The invoices, which are attached to Plaintiff's default judgment motion, provide in relevant part that "Buyer agrees to pay interest of 1 1/2% [sic] per month on the unpaid balance[,] and all collections costs[,] including attorney's fees[,] shall be considered sums owed in conection [sic] with this transaction under PACA trust [sic]." (*See* Dkt. No. 17-1 at 4, 6). Based on this language, the Magistrate Judge concludes that Plaintiff is entitled to attorney's fees.

The Magistrate Judge will thus proceed to determine a reasonable attorney's fees award by first calculating the lodestar amount and then assessing whether that amount should be adjusted based on the *Johnson* factors.

**B. Lodestar Amount**

Addressed in turn for purposes of the lodestar are the determination of the hours reasonably expended in the litigation, the reasonable hourly rate, and the calculation of the resulting amount.

1. <u>Billable Hours</u>

Plaintiff seeks compensation for 47.75 hours billed by Mr. Amendola during the ten-month period from June 2024, when Mr. Amendola first took on the case, through March 2025, when final judgment was entered. (Dkt. No. 25 at 5-6). Mr. Amendola has submitted invoices itemizing the hours and dates he worked on this case and describing the work conducted. (Dkt. No. 25-1 at 5-18). He states that "[m]ore time than usual was expended serving [Defendants] with the Summons and the Complaint since [Defendants] were transient between their business location (while winding down operations) and two . . . residence locations." (*Id.* at 2-3). Mr. Amendola also states that Defendants' "non-responsiveness" necessitated the filing of multiple requests for continuances. (*Id.* at 3). In attempting to demonstrate billing judgment, Mr. Amendola indicates that he does not seek compensation for the preparation and filing of the Motion. (*Id.* at 2).

Upon review of Mr. Amendola's invoices, the Magistrate Judge does not find any entries reflecting what are obviously unproductive, excessive, or redundant tasks. Nevertheless, the hours billed should be reduced insofar as Mr. Amendola engaged in what appear to be some purely clerical or administrative tasks. Indeed, an attorney's hourly rate should not be applied to clerical, secretarial, or administrative work insofar as such work is considered part of office overhead. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 756 (S.D. Tex. 2008).

"Tasks such as printing and filing, calendaring, recording deadlines, and obtaining court procedures have been determined to be clerical." *Amore Produce*, 2021 WL 5155715, at *5 (collecting cases). Also clerical in nature are the tasks of "[p]reparing, assembling, and redacting documents and exhibits, including affixing labels[.]" *Bowman v. Prida Construction, Inc.*, 568 F. Supp. 3d 779, 787 (S.D. Tex. 2021). Notably, the dollar value of any clerical work is not enhanced merely because it may have been performed by a solo practitioner who lacks support staff. *See Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754, at *8 (N.D. Tex. Feb. 11, 2011) (citing *Johnson*, 488 F.2d at 717). Where billing entries lump together legal and clerical tasks, the hours billed may be subject to an overall percentage reduction to account for the improper billing.[1] *See Bowman*, 568 F. Supp. 3d at 787 & n.3.

Here, some of the clerical tasks performed and billed by Mr. Amendola include the following: establishing a new client file (Dkt. No. 25-1 at 5); organizing exhibits and court documents (*id.* at 5, 9, 11-13, 18); downloading court documents and dockets (*id.* at 5, 17); filing documents (*id.* at 5, 9, 11-14, 16); calendaring dates and deadlines (*id.* at 7, 11, 14, 16); serving documents (*id.* at 7, 11-14, 16, 18); tracking mailings (*id.* at 13); researching and verifying addresses (*id.* at 5, 7); researching contact information (*id.* at 17); and making payments or posting costs (*id.* at 7, 9). Because the invoices routinely lump many of these clerical tasks together with legal tasks, the total hours billed should be reduced by an overall percentage to account for the clerical tasks, such that a reduction of fifteen percent is appropriate. Accounting for this reduction of the 47.75 hours billed yields 40.6 attorney hours (when rounding up to the next billable unit).

---

[1] To be clear, lumped billing of this sort—or "block billing"—is generally disfavored for purposes of the lodestar method because it can impair the evaluation of how many hours were spent on any particular task and, in turn, whether the hours billed were reasonably expended. *See Jolie v. Nick's Management, Inc.*, 2024 WL 5301769, at *11 (N.D. Tex. Nov. 5, 2024); *see also Mid-Continent Casualty Co. v. Petroleum Solutions, Inc.*, 2017 WL 6942658, at *12 (S.D. Tex. Sept. 21, 2017).

A total of 40.6 attorney hours expended is comparable to other PACA cases culminating in a default judgment. *See, e.g.*, *Mirasoles Produce USA, LLC v. Sanchez Farms*, 2024 WL 3626708, at *3, 5 (N.D. Tex. July 24, 2024) (concluding that 48.25 hours of attorney work were reasonable), *report and recommendation adopted*, 2024 WL 3625668 (N.D. Tex. July 31, 2024).

Therefore, the Magistrate Judge concludes that a total of 40.6 hours were reasonably expended in this case.

2. Hourly Rate

Plaintiff requests that the attorney hours expended be billed at Mr. Amendola's normal hourly rate of $395. (Dkt. No. 25 at 6).

In support of this rate, Mr. Amendola declares that he has over 35 years of experience as an attorney and is currently employed as Senior Litigation Counsel in the law firm of Martyn and Associates Co. in Cleveland, Ohio. (Dkt. No. 25-1 at 1). Since 1996, he has limited his practice to federal court litigation representing corporate clients who have trust claims under PACA. (*Id.*). Mr. Amendola states that his hourly rate is "consistent with or below rates charged by other attorneys with [his] years of experience as a practicing attorney in a specialty field of federal court litigation." (*Id.* at 2). Moreover, Plaintiff points to the recent case of *Mirasoles Produce USA, LLC v. Sanchez Farms*, 2024 WL 3626708 (N.D. Tex. July 16, 2024), where Mr. Amendola's hourly rate of $395 was deemed reasonable. *See id.* at *3-4.

Notably, the *Sanchez Farms* case does not necessarily reflect the applicable rate in which this court sits. Recent PACA cases out of the McAllen Division for the Southern District of Texas suggest that Mr. Amendola should be compensated at a rate lower than his normal hourly rate. For example, in a PACA case decided in 2021 by default judgment, *Produce Pay, Inc. v. Amore Produce, LLC*, 2021 WL 5155715 (S.D. Tex. July 21, 2021), the Honorable Juan F. Alanis, U.S.

Magistrate Judge, deemed reasonable a requested hourly rate of $275 for work completed by a law firm partner with around 40 years of experience. *Id.* at *6. In making this determination, the court referred to an earlier case out of the McAllen Division, *Produce Pay, Inc. v. Vermex Produce LLC*, Action No. 7:17-CV-0348, where lead counsel billed at a rate of $375 per hour. *Amore Produce*, 2021 WL 5155715, at *6. Notably, in the *Vermex Produce* case, decided by the Honorable Randy Crane, now-Chief U.S. District Judge, although the lodestar amount was reduced, this was not because the hourly rates were deemed unreasonable, but due rather to the excessive number of hours billed in obtaining a default judgment. *See* Action No. 7:17-CV-0348, Dkt. No. 46.

Here, considering that this court previously approved a $375 hourly rate in a similar case, that Mr. Amendola has over 35 years of experience, and that Mr. Amendola works exclusively on PACA trust cases, the Magistrate Judge concludes that a rate of $375 per hour is reasonable.

### 3. Calculation of the Lodestar Amount

As discussed, the Magistrate Judge concludes that Mr. Amendola reasonably expended 40.6 hours of work. The Magistrate Judge also concludes that a $375 hourly rate for attorney work is reasonable in this case. Multiplying the 40.6 billable hours by the $375 hourly rate for attorney work yields a lodestar amount $15,225.00.

### C. Adjustment of the Lodestar Amount

Here, the Magistrate Judge concludes that the lodestar amount of $15,225.00 is reasonable as an attorney's fees award. As noted, the judgment obtained by Mr. Amendola comprises the full range of claimed damages, including principal, interests, and costs. Notably, a lodestar is not unreasonable simply because it may exceed the damages awarded, even if the lodestar exceeds the damages award by multiples. *See City of Waco v. Kleinfelder Central, Inc.*, 2017 WL 401281, at *7-8 (W.D. Tex. Jan. 30, 2017). Regarding the other *Johnson* factors, the Magistrate Judge

concludes that they were either already considered in calculating the lodestar amount (such as the time and labor involved, the customary fee charged for services in the community, and the experience, reputation, and ability of Mr. Amendola) or are inapplicable in this case (such as the time limitations imposed by the client). *See Amore Produce*, 2021 WL 5155715, at *6. Accordingly, no adjustment of the lodestar amount is necessary.

## D. Costs

Plaintiff requests an award of $977.02 in costs related to complaint filing fees, document certification fees, process server fees, photocopying, postage, mailing, and computerized docket research. (Dkt. No. 25 at 6; Dkt. No. 25-1 at 4). Depending on the contractual language of an unpaid invoice for agricultural commodities, sums owed in connection with collecting on that invoice may include costs of court. *See Del Monte Fresh Produce N.A., Inc. v. Another Produce Co.*, 2008 WL 11349894, at *1-2 (N.D. Tex. July 24, 2008). The Magistrate Judge concludes that the applicable invoice language here is broad enough to encompass Plaintiff's requested court costs. (*See* Dkt. No. 17-1 at 4, 6). Accordingly, based on the invoice language, Plaintiff should be entitled to $977.02 in costs.[2]

---

[2] Another avenue for the taxation of costs—albeit a potentially narrower one—comes by way of Rule 54 of the Federal Rules of Civil Procedure. Under Rule 54, a prevailing party is entitled to costs (other than attorney's fees) unless a federal statute, the federal rules, or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1). Taxable costs listed in 28 U.S.C. § 1920, the taxation of costs statute, are as follows: (1) fees of the clerk and marshal; (2) transcript costs; (3) printing fees and witness disbursements; (4) copying fees; (5) certain docket fees; and (6) compensation of court appointed experts and interpreters. Some courts have held in the context of a PACA trust case that, because costs related to private process servers and docket research are not listed in the taxation of costs statute, such costs are not recoverable by the prevailing party. *See Sanchez Farms*, 2024 WL 3626708, at *4. As noted above, however, the Magistrate Judge concludes that the full range of Plaintiff's requested costs are available based on the breadth of the relevant contractual language in the unpaid invoices.

## III. CONCLUSION

### *Recommended Disposition*

For these reasons, the Magistrate Judge RECOMMENDS that the Motion (Dkt. No. 25) be GRANTED to the extent that Plaintiff should be awarded attorney's fees in the amount of $15,225.00 and costs in the amount of $977.02

### *Objections*

Within fourteen (14) days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file written objections within fourteen (14) days after service shall bar an aggrieved party from de novo review by the District Judge on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Judge, except on grounds of clear error or manifest injustice.

DONE at McAllen, Texas this 12th day of May 2025.

J. SCOTT HACKER
United States Magistrate Judge